HARMAN *v.* CLAIBORNE et al., Commissioners.

The right of action of the holder against the drawer of a check payable to order, drawn by a
bank here on a bank in another State, is prescribed by five years, from the time when the
check was payable. C. C. 3505.

The entry of a check on the books of the drawer as unpaid, does not interrupt prescription
running in his favor.

APPEAL from the Parish Court of New Orleans, *Maurian*, J.
*Benjamin* and *Micou*, for the appellant. Prescription was interrupted by

the acknowledgments of the debt, made by the defendants from time to time in their own books. Civ. Code, art 3486. "La prescription s'interrompt non-seulement par ces titres nouvels, *mais par quelque acte que ce soit, qui est récognitif de la dette.*" Pothier, Cout. D'Orleans, tit. 14, no. 46. The acknowledgment of a debt on the *bilan* of an insolvent, interrupts prescription. 2 Troplong, Prescrip. p. 293, no. 719. An acknowledgment need not be accepted, since it is a confession, not a contract. 2 Trop. Prescrip, p. 152, no. 615. It may be tacit. Ibid. p. 154, no. 618. Cet cela bien que sa reconnaissance ne soit que tacite, c'est-à-dire résultant de certains faits. Rogron, note to art 2248, Code Nap. This check being drawn from one bank upon another, is a bank note within the exception of art. 3505. Such checks are frequently used as a currency, and the reason of the exception will apply to them.

*L. Peirce,* for the defendants. The claim is prescribed. *Merlin, verbo* Prescript. s. 1, § 1, no. 1.

The judgment of the court was pronounced by

EUSTIS, C. J. This action is brought on a duplicate check drawn by the late Bank of Orleans on the Bank of Pennsylvania, payable to the order of the plaintiff, for $2000. It bears date May 10, 1836, and was protested for non-payment, on the 5th of July, 1844. It appears that the mails of the 10th and 11th of May, 1836, were destroyed by the Creek Indians; and as it is probable that this check was transmitted to its place of payment in Philadelphia by one of these mails, the loss of the original of the check may be presumed, there being no means of establishing the fact of the check's having been put in the post office, in consequence of the death of the party who purchased it for the plaintiff. The plaintiff went to England in March, or April, 1836, and returned five or six years after. The loss of the check was never advertised, nor is any explanation given, which is at all satisfactory, of the neglect in presenting the duplicate.

Checks of this kind are used for purposes of immediate circulation; but the law is well settled that they must be presented for payment within a reasonable time. It cannot be required that bankers should keep their accounts open, at the caprice of the holders of checks or bills, beyond a period which the usual course of business exacts from them. Chitty on Bills, 301, 413. Besides, we agree with the counsel for the defendants that, this action is prescribed under article 3502 of the Civil Code; nor do we find any act on the part of those who had charge of the affairs of the bank, or of the commissioners since, which interrupts or waives the prescription acquired. The amount of the check, $2000, was carried to suspense account, in July, 1841; up to that time, it was calculated as *in transitu.* The bank was bound to keep its accounts in the usual form, and in a manner to present its relations with its customers. The accounts with the Bank of Pennsylvania were not closed until after that period. On examining the authorities cited by the counsel for the plaintiff, and one of them, that of Troplong, is the most recent work on the subject of prescription, we do not find that the entry of a note or bill on the books of a party, has ever been considered as interrupting prescription. *Judgment affirmed.*