LOTTINGER, Judge.
This is a suit to cancel a mortgage. Plaintiff contends that on May 1, 1959, he executed a note and mortgage in the amount of Seven Thousand and No/100 ($7,000.00) Dollars, payable to the order of Bearer on demand. This suit is based on the ground that since the date of the note until the suit was filed, July 12, 1966, no payments have been made, and therefore, under the provisions of LSA-C.C. Art. 3540, the note and mortgage have prescribed.
The record points out that not only did the plaintiff sign the $7,000.00 note on *544 May 1, 1959, but apparently he also signed one on the same date for $4,100.00 payable at $18.44 per month. This $4,100.00 note was secured by a first mortgage on certain real estate belonging to the plaintiff, and the $7,000.00 note was secured by a second mortgage on the same real estate. The $7,000.00 note is owned by Copping, Pujols and Copping, a partnership composed of George F. Copping, Sr., Rene Pujols, and Patrick F. Copping. The $4,100.00 note is owned by Midtown Investment Company (hereinafter sometimes referred to as Midtown). And further, on August 3, 1959, plaintiff executed a note for $692.01, payable at $15.00 per month and owned by Gen-tilly Investment Company (hereinafter sometimes referred to as Gentilly).
Plaintiff contends that though he has regularly made payments on the $4,100.00 note and $692.01 note, he has never made any payments on the $7,000.00 note, in fact, he testified that he never received any consideration for the $7,000.00 note. As to the $4,100.00 note, plaintiff testified that he paid $20.00 per month, though his payment was only $18.44 per month. This payment was sent to Midtown Investment Company. Of the $20.00 monthly payment, Midtown applied $1.56 to the $7,000.00 note which was owned by the partnership of Copping, Pujols and Copping. When the plaintiff realized that he was not getting credit for this $1.56, he stopped sending $20.00 and only sent $18.44 per month. Also during this period of time, plaintiff was paying $15.00 a month to Gentilly Investment Company. When he stopped paying the extra $1.56 to Midtown, the $1.56 was deducted from the $15.00 payment to Gentilly and applied to the $7,000.00 note.
It is the contention of the defendants that the $1.56 payment on the $7,000.00 note has interrupted prescription, and therefore the $7,000.00 note has not prescribed.
Mr. Patrick F. Copping testified that the $692.01 promissory note was owed to Gen-tilly Investment Company, a partnership with “quite a number of people in it,” and the $4,100.00 promissory note was owned by Midtown Investment Company, a corporation. He further agreed at the trial that some of the partners of Gentilly were in the corporation, and some of the shareholders of the corporation were in the Gentilly, but that it was not the same people altogether. As far as the $7,000.00 note, Mr. Copping testified that it belonged to Copping, Pujols and Copping and not to Midtown or Gentilly. He further agreed that all three were different companies. When questioned by the Court as to the purpose of the $7,-000.00 note, Mr. Copping stated:
“Judge, in reality, it’s to prevent the man from putting a second mortgage on the house and it was going to be a walk out proposition. The minute he does, he is going to walk off and leave it and I’m holding the bag.”
Mr. Copping testified that he was never requested nor authorized in writing to deduct the $1.56 from the payments.
When called, Mrs. Patrick F. Copping testified that she deducted the $1.56 per month from the Gentilly and Midtown payments on the authorization of Mr. Copping and not Mr. Lindsley.
The Trial Court ruled in favor of plaintiff and ordered the cancellation of the mortgage, and defendants have perfected this suspensive appeal.
There is no question but that the plaintiff did in fact execute three separate promissory notes. One was owned by the defendants, Copping, Pujols and Copping; one by Gentilly Investment Company; and one by Midtown Investment Company. Further, there is no dispute but that the plaintiff did send payments to Gentilly and Midtown. And still further, there is no mistake but that the Coppings were connected with all three concerns and it seems from the record, perhaps in control, and that on the authorization of Patrick Copping, Mrs. Patrick Copping deducted from the $20.00 payment to Midtown the sum of $1.56 and applied it to the $7,000.00 note, *545 and when the plaintiff stopped sending the extra $1.56 to Midtown, Mrs. Copping started deducting this amount from the $15.00 payment to Gentilly.
In essence, the defendants contend that because of the $1.56 payment per month on the $7,000.00 note, the note has not prescribed inasmuch as they have imputed payments on the other two notes to the $7,000.00 note, and further contend that the plaintiff has received notice of the imputation of payments.
This situation is unique in that we have one debtor who owes several debts to several creditors, and not one debtor owing several debts to one creditor. We are of the opinion that the articles of the Civil Code on “imputation of payments”, being Article 2163 et seq. do not apply between a single debtor and several creditors. We are not presented with the situation where a debtor owes a single creditor several debts. The three creditors in the instant case were separate legal entities, though several individuals were connected with all of these creditors.
We can find no authority in the law of this state which would allow one creditor to deduct from a payment made by a debtor to that creditor and to apply this deducted payment to any debt owed to another creditor. There is no question but that when Mr. Lindsley sent in his monthly payment of $20.00 to Midtown Investment Company, he expected the whole of the $20.00 to be applied to that account. This was the only debt that he owed to Midtown Investment, and there was no other conceivable account that they could have possibly imputed any portion of the $20.00 to. The same must hold true for the $15.00 payment to the Gentilly Investment Company. Therefore, the imputation of payment of the $1.56 to the $7,000.00 note is of no effect and has no validity.
Therefore, no payments have been made on the $7,000.00 note. LSA-C.C. Art. 3540 provides:
“Actions on bills of exchange, notes payable to order or bearer, except bank notes, those on all effects negotiable or transferrable by indorsement or delivery, and those on all promissory notes, whether negotiable or otherwise, are prescribed by five years, reckoning from the day when the engagements were payable.”
In State ex rel. Sunseri v. Thoman, 135 So.2d 791 (La.App. 1st Cir. 1961), we held that:
“As regards a demand note, prescription runs from the date thereof, and not from the date of demand. Darby v. Darby, 120 La. 847, 45 So. 747, 14 L.R.A.,N.S. 1208.”
The Lower Court decreed:
«* * * that the mortgage dated May 1, 1959, executed by William S. Lindsley in the amount of $7,000.00, payable to the order of ‘bearer’ on demand, recorded in M.O.B. 146, folio 571, and bearing on the following described property:
Two certain lots of ground, situated in the parish of St. Tammany, Louisiana, in that part known as Slidell Heights Subdivision, which lots are designated by the numbers two and four in square ten, bounded by Carnation Street, Magnolia Avenue, Cypress and Cedear Streets. Said lots adjoin each other and measure each lot 50 feet front on Carnation Street by 169 feet in depth and Lot No. 2 forms the corner of Carnation and Cypress Streets as per plat made by M. C. Huckaby, C. E., Surveyor of Washington Parish, Louisiana, May 24, 1919. Said lots are located in the north portion (which includes a part of the south half) of Lot No. 2 of Section 3, Township 9 South, Range 14 East, and a portion of the SW(4 of Section 34, Township 8 South, Range 14 East, St. Helena Meridian, St. Tammany Parish, Louisiana;
215 So.2d — 35
*546 be, and the same is hereby, decreed to be null, void, and of no force or effect whatsoever.
IT IS FURTHER ORDERED by the Court that the defendants deliver to William S. Lindsley, through Philip E. Pfei-fer, his attorney at law, the promissory note identified with said mortgage, and that upon presentation of same the Clerk of this Court cancel and erase the mortgage as aforesaid.”
For the above and foregoing reasons, the judgment of the Trial Court is affirmed and the costs of this appeal are to be paid by the defendants.
Judgment affirmed.